UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

IN RE: CHARLES PAUL ALONZO,              CIVIL ACTION
JR. & CAROLYN WILLIAMS
ALONZO

                                             NO: 11-2426
                                                            11-2927
                                                            11-2928

                                             SECTION: "S" (2)

## OPINION

     E.H. Mitchell & Company, L.L.C. ("Mitchell") appeals the bankruptcy court's decision in Adversary Proceeding No. 10-1044 dismissing its complaint that sought to have a debt owed to it by debtor in bankruptcy, Charles Paul Alonzo, Jr., excepted from discharge pursuant to 11 U.S.C. §§ 523(a)(2), (4), and/or (6). Mitchell also appeals the bankruptcy court's ruling pertaining to Adversary Proceeding Nos. 10-1081 and 10-1083, that it does not have a valid secured claim, lien, right, interest, or privilege in the properties at issue and that any liens it asserts are subordinate to the bankruptcy estate's rights to the properties and the proceeds thereof pursuant to 11 U.S.C. § 551 and the consent judgment entered in related Adversary Proceeding No. 10-1026 in the United States Bankruptcy Court for the Eastern District of Louisiana. Further, Mitchell appeals the bankruptcy court's denial of its motion to lift the automatic stay to affect foreclosure proceedings on one of the debtors' properties. For the reasons set forth, the decisions of the bankruptcy court are **AFFIRMED.**

**BACKGROUND**

Charles Paul Alonzo, Jr., is a principal of Phoenix Associates Land Syndicate, Inc. ("PALS"). In 1997, PALS purchased a mineral lease to mine sand and gravel products from Mitchell's land in St. Tammany Parish, Louisiana. In 2003, PALS sued Mitchell and one of its principals, Steven Furr, in the Twenty-Second Judicial District Court, Parish of St. Tammany, State of Louisiana, alleging contract interference. Mitchell filed a counterclaim against PALS and Alonzo, alleging that they were removing material from Mitchell's land without properly accounting or paying for it. On September 15, 2006, the court dissolved the mineral lease, and the parties continued to litigate other issues. Mitchell recorded the judgment dissolving the lease in the St. Tammany Parish mortgage records.

On October 24, 2006, Alonzo and his wife settled "The Carolyn Williams Alonzo and Charles Paul Alonzo, Jr. Irrevocable *Inter Vivos* Trust." The Alonzos were the trustees and primary beneficiaries of the Trust, and other family members were the secondary beneficiaries. They donated title to their immovable property, both separate and community, to their family trust.

On November 6, 2007, Mitchell filed an *in rem* revocatory action in the Twenty-Second Judicial District Court, Parish of St. Tammany, State of Louisiana seeking to avoid the transfers of the immovable property to the Alonzo family trust. On November 6, 2007, and September 18, 2009, Mitchell filed notices of *lis pendens*, placing third parties on notice of the revocatory action.

The civil action relating to the unresolved issues involving the lease between Mitchell and Charles Alonzo and PALS proceeded to trial in January 2009. After a two-month trial, the jury found that PALS: (1) breached its duty under the lease by failing to maintain proper books and

2

records that reflected its operations pursuant to the lease; (2) breached its duty under the lease by failing to show the amount of material removed from the leased premises; (3) breached its duty under the lease by failing to account to Mitchell for all the material removed from the leased premises; (4) breached its duty under the lease by selling or removing overburden, *i.e.* material above the sand and gravel; (5) breached its duty to perform the contract in good faith and develop and operate the leased property as a reasonably prudent operator for the mutual benefit of PALS and Mitchell; (6) misrepresented or suppressed the truth with the intention either to obtain an unjust advantage for itself or to cause loss or inconvenience to Mitchell; and, (7) wrongfully exercised or assumed authority over Mitchell's dirt, sand, or gravel materials, or royalties therefrom, depriving Mitchell of possession either permanently or for an indefinite period of time. The jury also found that Charles Alonzo misrepresented or suppressed the truth with the intention either to obtain an unjust advantage from himself or to cause loss or inconvenience to Mitchell, and that he was personally liable for the debts of PALS and Bayou State Trucking Co., L.L.C. because of a lack of corporate formalities. The jury awarded Mitchell $3,563,585, subject to a credit of $350,000 for improvements that it found PALS made to Mitchell's property with Mitchell's consent.

On March 18, 2009, a judgment was rendered in Mitchell's favor and against PALS and Charles Paul Alonzo, "individually and *in solido*," awarding Mitchell $3,213,585.00 plus costs, attorneys fees, and legal interest from the date of demand. The judgment states "attorney's fees and remaining unresolved legal issues, to be determined by this Court after hearing, all in accordance with applicable law." Further, the judgment dismisses PALS's lawsuit against Furr with prejudice, and Mitchell's reconventional demand against Bayou State Trucking with prejudice.

Mitchell recorded the judgement in the St. Tammany Parish mortgage records on April 3, 2009. On June 2, 2009, Mitchell had the St. Tammany Parish Sheriff serve the Alonzos with a petition for garnishment under a writ of *fieri facias*, interrogatories, and a notice of seizure of their community property trust interests. Alonzo filed a devolutive appeal of the judgment on June 24, 2009.[1]

On January 22, 2010, the Alonzos filed for bankruptcy protection under Chapter 7 of the Bankruptcy Code in the United States Bankruptcy Court for the Eastern District of Louisiana, Case No. 10-10176. Mitchell filed a claim in the bankruptcy proceedings for payment of the state court judgment, and filed Adversary Proceeding No. 10-1044 seeking to have the debt evidenced by the March 18, 2009, judgment declared nondischargable pursuant to 11 U.S.C. §§ 523(a)(2), (4), and/or (6) due to Charles Alonzo's alleged fraud. Mitchell also filed Adversary Proceeding No. 10-1081 seeking to have Carolyn Alonzo's purported separate property declared community property and seeking a judgment recognizing liens Mitchell claims to have on the bankruptcy estate's property. The bankruptcy trustee, David V. Adler, filed a counterclaim against Mitchell asserting that the property was Carolyn Alonzo's separate property. Also, the bankruptcy trustee filed Adversary Proceeding No. 10-1083, objecting to Mitchell's proof of claim.

Adversary Proceeding Nos. 10-1081 and 10-1083 were consolidated for trial. Mitchell attempted to have the automatic stay lifted to foreclose on the one parcel of community property that

---

[1] The parties dispute whether the March 18, 2009, judgment was a final judgment. It is unnecessary to resolve that dispute, and the court assumes that it was a final judgement for the purposes of this Opinion.

4

the Alonzos donated to their family trust, arguing that it had a valid lien on the property that exceeded the property's value.[2]

On March 15, 2010, the revocatory action that Mitchell filed in the Twenty-Second Judicial District Court, Parish of St. Tammany, State of Louisiana was removed to the bankruptcy court and assigned Adversary Proceeding No. 10-1026. With Mitchell's consent, the bankruptcy trustee was substituted as the proper party plaintiff. On June 14, 2010, the bankruptcy court entered a consent judgment in that action that avoided the transfers of the immovable property to the Alonzo family trust; put the bankruptcy trustee in possession and ownership of the immovable property; and, pursuant to 11 U.S.C. § 551, preserved the avoided transfers for the benefit of the estate above any other rights to the immovable property allegedly acquired by subsequent parties.

On March 24, 2011, the bankruptcy court held a trial regarding Mitchell's complaint in Adversary Proceeding No. 10-1044. At the trial, Furr testified on behalf of Mitchell, and his testimony was used to introduce the state court jury instructions, jury verdict form, and judgment. Mitchell argued that these documents are sufficient to prove that the state court judgment against Charles Alonzo is a nondischargable debt under §§ 523(a)(2), (4), and/or (6), and that the bankruptcy court is collaterally estopped from relitigating issues that were resolved in the state court. On August 12, 2011, the bankruptcy court issued a Memorandum Opinion dismissing Mitchell's complaint in Adversary Proceeding No. 10-1044. The bankruptcy court held that the

---

[2] The bankruptcy court denied Mitchell's motion to lift the stay, and Mitchell appealed that decision to this court in Civil Action No. 10-2824. This court affirmed the bankruptcy court's ruling and noted that Adversary Proceeding Nos. 10-1081 and 10-1083 needed to be resolved by the bankruptcy court before this court would have jurisdiction over the issues presented therein.

state court jury instructions, jury verdict form, and judgment, the only evidence Mitchell introduced, were not sufficient to satisfy the elements of nondischargability under §§ 523(a)(2), (4), and/or (6). Mitchell appeals that decision in Civil Action No. 11-2426.

On April 7, 2011, Adversary Proceeding Nos. 10-1081 and 10-1083 came before the bankruptcy court for trial. Mitchell argued: (1) all of the property Carolyn Alonzo claims is separate property is community property; (2) it has secured liens against the properties that were recovered by the Trustee because of the recordation of the March 18, 2009, judgment against Charles Alonzo; and, (3) it obtained a lien or privilege against the properties through garnishment procedures. On October 7, 2011, the bankruptcy court issued a Memorandum Opinion in which it held that Mitchell does not have a valid secured claim, lien, right, interest, or privilege in the properties at issue, and that the bankruptcy estate rightfully holds the titles to the properties pursuant to 11 U.S.C. § 551 and the consent judgment entered in related Adversary Proceeding No. 10-1026.[3]

## DISCUSSION

**A. Standard of Review**

District courts of the United States have jurisdiction to hear appeals from orders of the bankruptcy court. See 28 U.S.C. § 158(a). "[C]onclusions of law are reviewed *de novo*, findings of fact are reviewed for clear error, and mixed questions of fact and law are reviewed *de novo*." In re Nat'l Gypsum Co., 208 F.3d 498, 504 (5th Cir. 2000). A bankruptcy court's decision regarding

---

[3] The court also found that Carolyn Alonzo's purported separate property is community property, but the determination of the character of the property is immaterial to the court's judgment herein. All property of the Alonzos, both separate and community, are now a part of the bankruptcy estate.

6

the preclusive effect of a state court judgment is reviewed *de novo*. In re Gupta, 394 F.3d 347, 349 (5th Cir. 2004).

B.  **Appeal from the Bankruptcy Court's August 12, 2011, Memorandum Opinion in Adversary Proceeding No. 10-1044 (C/A No. 11-2426)**

Mitchell argues that Furr's testimony and the presentation of the March 18, 2009, judgment, jury instructions, and jury verdict form from the Twenty-Second Judicial District Court, Parish of St. Tammany, State of Louisiana was sufficient to prove the non-dischargeability of Charles Alonzo's debt to Mitchell under §§ 523(a)(2), (4), and/or (6) due to Charles Alonzo's alleged fraud.

  1.  **Collateral Estoppel**

"A bankruptcy court may apply collateral estoppel in a dischargeability preceding to preclude relitigation of state court findings that are relevant to dischargeability." Gupta, 394 F.3d at 349. Pursuant to the Full Faith and Credit statute, 28 U.S.C. § 1738, "judicial proceedings of any court of any . . . State . . . shall have the same full faith and credit in every court within the United States . . . as they have by law or usage in the courts of such State . . . from which they are taken." Therefore, the preclusion law of the State in which the judgment was rendered is considered in determining whether collateral estoppel should apply. Matter of Gober, 100 F.3d 1195, 1201 (5th Cir. 1996). Louisiana Revised Statutes § 13:4231(3) provides that "[a] judgment in favor of either the plaintiff or the defendant is conclusive, in any subsequent action between them, with respect to any issue actually litigated and determined if its determination was essential to that judgment."

7

However, the bankruptcy court has exclusive jurisdiction to determine whether a debt is nondischargeable as defined by the bankruptcy law. Matter of Dennis, 25 F.3d 274, 278 (5th Cir. 1994). Therefore,

> . . . in only limited circumstances may bankruptcy courts defer to the doctrine of collateral estoppel and thereby ignore Congress' mandate to provide plenary review of dischargeability issues. Collateral estoppel applies in bankruptcy courts only if, *inter alia*, the first court has made specific, subordinate, factual findings on the identical dischargeability issue in question - that is, an issue which encompasses the same *prima facie* elements as the bankruptcy issue - and the facts supporting the court's findings are discernable from that court's record.

Id.

### a. 11 U.S.C. § 523(a)(4)

Section 523(a)(4) provides that discharge under certain sections of the Bankruptcy Code "does not discharge an individual debtor from any debt for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny." 11 U.S.C. § 523(a)(4). This exception to dischargeability is "intended to reach those debts incurred through abuses of fiduciary positions and through active misconduct whereby a debtor has deprived others of their property by criminal acts; both classes of conduct involve debts arising from the debtor's acquisition or use of property that is not the debtor's." In re Savage, 333 Fed. Appx. 831 (5th Cir. 2009) (quotations omitted). "Fiduciary capacity" does not qualify "embezzlement" or "larceny." Id. Thus, a fiduciary relationship between the debtor and creditor is not required for a debt for embezzlement or larceny to be nondischargeable. Id.

Under this section, "fiduciary" "is limited to instances involving express or technical trusts," "the trustee's duties must arise independent of any contractual obligation," and the trustee's obligations must have been imposed prior to any claimed misappropriation or wrong. Matter of Tran, 151 F.3d 339, 342 (5th Cir. 1998). "Embezzlement" is "the fraudulent appropriation of property by a person to whom such property has been entrusted, or into whose hands it has lawfully come," and it requires "proof of the debtor's fraudulent intent in taking the property." Savage, 333 Fed. Appx. at 831. "Larceny is the fraudulent and wrongful taking and carrying away of the property of another with the intent to convert the property to the taker's use without the consent of the owner." 4 COLLIER ON BANKRUPTCY ¶ 523.10[2] (15th ed. 1999).

The bankruptcy court correctly found that Mitchell failed to satisfy its burden of proof that the state court judgment against Charles Alonzo in its favor is nondischargeable under § 523(a)(4). The jury instructions, jury verdict form, and judgment were the only evidence Mitchell introduced, and, as the bankruptcy court noted, "nothing in the jury verdict addresses whether Charles Alonzo was acting in a fiduciary capacity to Mitchell, or finds that there was embezzlement or larceny." There are no portions of the jury instructions or the jury verdict form that address the elements of "fiduciary," "embezzlement," or "larceny" as they are defined for § 523(a)(4). Further, Mitchell did not offer any further evidence regarding Charles Alonzo's alleged fiduciary capacity, embezzlement, or larceny. Therefore, the bankruptcy court's decision that the state court judgment is not a nondischargeable debt under § 523(a)(4) is AFFIRMED.

### b. 11 U.S.C. § 523(a)(6)

Pursuant to §523(a)(6), discharge under certain sections of the Bankruptcy Code "does not discharge an individual debtor from any debt for willful or malicious injury by the debtor to another entity or to the property of another entity." 11 U.S.C. § 523(a)(6). Under this section "an injury is 'willful and malicious' where there is either an objective substantial certainty of harm or a subjective motive to cause harm." Matter of Miller, 156 F.3d 598, 606 (5th Cir. 1998).

The bankruptcy court correctly found that Mitchell did not prove the nondischargeability of the debt under §523(a)(6) because "the jury verdict does not address whether there was any sort of willful or malicious injury, and Mitchell put on no evidence to support its claims under this subsection of section 523." There are no portions of the jury instructions or the jury verdict form that address the elements of "wilful and malicious" conduct as they are defined for § 523(a)(6), *i.e.* an objective substantial certainty of harm or a subjective motive to cause harm. Further, Mitchell did not offer any additional evidence to support his argument that the debt is nondischargeable under this section. Therefore, the bankruptcy court's decision that there is no proof that the state court judgment is a nondischargeable debt under § 523(a)(6) is AFFIRMED.

### c. 11 U.S.C. § 523(a)(2)(A)

Under § 523(a)(2)(A), discharge under certain sections of the Bankruptcy Code "does not discharge an individual debtor from any debt for money, property, services, or extension, renewal, or refinancing of credit, to the extent obtained by false pretenses, false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition." To prove a debt is nondischargeable under this section, the creditor must demonstrate that: (1) the debtor made

a representation; (2) the debtor knew the representation was false; (3) the representation was made with the intent to deceive the creditor; (4) the creditor actually and justifiably relied on the representation; and, (5) the creditor sustained a loss as a proximate result of its reliance. In re Acosta, 406 F.3d 367, 372 (5th Cir. 2005).

As explained in the state court jury instructions, under Louisiana law, "[f]raud is a misrepresentation or suppression of the truth made with the intention whether to obtain an unjust advantage for one party or to cause a loss or inconvenience to the other. Fraud may also result from silence or inaction." LA. CIV. CODE art. 1953. Proving fraud requires demonstrating that: (1) there was an intent to defraud or gain an unfair advantage; and, (2) there was resulting loss or damage. Mooers v. Sosa, 798 So.2d 200, 207 (La. Ct. App. 2001) (citing First Downtown Development v. Cimochowski, 613 So.2d 671, 677 (La. Ct. App. 1993)).

In questions number four and five of the jury verdict form, the jury found that PALS and Charles Alonzo committed fraud against Mitchell. The bankruptcy court correctly held that the first and second elements of fraud under Louisiana law correspond with the third and fifth elements of fraud under § 523(a)(2)(A), respectively, and that the jury's response to question number five satisfies that the first requirement under § 523(a)(2)(A), that the debtor have made the representations.

However, as the bankruptcy court stated, nothing in the jury instructions, or the jury verdict form address the issue of justifiable reliance. For the purposes of § 523(a)(2)(A), justifiable reliance "is a matter of the qualities and characteristics of the particular plaintiff, and the circumstances of the particular case, rather than of the application of a community standard of conduct to all cases."

Field v. Mans, 116 S.Ct. 437, 444 (5th Cir. 1995) (quotations omitted). "Justifiable reliance" applies "only where, under the circumstances, the facts should be apparent to one of [the plaintiff's] knowledge and intelligence from a cursory glance, or if he has discovered something which should serve as a warning that he is being deceived, that he is required to make an investigation of is own." Id. Nothing in the state court jury instructions or jury verdict from addresses these elements. Therefore, the bankruptcy court's decision that there is no proof that the state court judgment is a nondischargeable debt under § 523(a)(2)(A) is AFFIRMED.

**C.      Appeals from the Bankruptcy Court's October 7, 2011, Memorandum Opinion Adversary Proceeding Nos. 10-1081 (C/A No. 11-2927) & 10-1083 (C/A No. 11-2928)**

Mitchell argues that the bankruptcy court erred in finding that it does not have a valid secured claim, lien, right, interest, or privilege in the properties at issue, and that any liens it asserts are subordinate to the estate's rights to the properties and the proceeds thereof pursuant to 11 U.S.C. § 551 and the consent judgment entered in related Adversary Proceeding No. 10-1026. Mitchell also argues that the bankruptcy court erred in denying its motion to lift the automatic stay to effect foreclosure proceedings on one of the debtors' properties.

**1.      Bankruptcy Estate's Right to the Properties Pursuant to 11 U.S.C. § 551 and the Consent Judgment in Adversary Proceeding No. 10-1026**

As discussed above, Mitchell's revocatory action seeking to avoid the Alonzos' transfers of their immovable property to their family trust was removed to the bankruptcy court, assigned Adversary Proceeding No. 10-1026, and the bankruptcy trustee was substituted as the proper party plaintiff pursuant to 11 U.S.C. § 544(b). Thereafter, the bankruptcy court entered a consent judgment in that action which states that the Alonzos' transfers of their immovable property to their

family trust are avoided, revoked, and set aside pursuant to 11U.S.C. § 544(b), and Louisiana Civil Code article 2036, et seq., the Louisiana law of revocatory actions.

Section 544(b) provides, in pertinent part, that "the trustee may avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable under applicable law by a creditor holding an unsecured claim that is allowable under section 502 of this title or that is not allowable only under section 502(e) of this title." 11 U.S.C. § 544(b). Section 550, Title 11, of the United States Code provides from whom the bankruptcy trustee can recover property for the benefit of the estate. Id. at § 550. Pursuant to § 550(a), the bankruptcy trustee can recover property from the initial transferee or the entity for whose benefit such transfer was made or any immediate or mediate transferee of such initial transfer. Id.

According to 11 U.S.C. § 551, any transfer avoided under § 544, "is preserved for the benefit of the estate but only with respect to the property of the estate. "[T]he purpose of this section is to allow a trustee in bankruptcy, upon avoidance of certain preferential or fraudulent transfers, to increase the assets of the bankruptcy estate." In re Van De Kamp's Dutch Bakeries, 908 F.2d 517, 519 (9th Cir. 1990).

On October 24, 2006, the Alonzos settled their family trust, naming themselves as co-trustess and the primary beneficiaries and other family members as secondary beneficiaries.[4] When they donated their immovable property to the trust, the title to that property vested in them as co-trustees, rather than as individuals. See LA. REV. STAT. § 9:1781; Bridges v. Autozone Properties, Inc., 900

---

[4] Pursuant to La. Rev. Stat. § 9:1783(A)(1), the trustee can also be both the settlor and the beneficiary.

So.2d 784, 796 (La. 2005); EDWARD E. CHASE, JR., 11 LA. CIV. L. TREATISE, TRUSTS § 1:2 (2nd ed.). "Under Louisiana law, title to the trust property vests in the trustee alone, and a beneficiary has no title to or ownership interest in trust property, but only a civilian 'personal right' vis-à-vis the trustee, to claim whatever interest in the trust relationship the settlor has chosen to bestow." Bridges, 900 So.2d at 796-97. Although the Alonzos had title and ownership of the property as trustees, they were required to manage the trust assets for the sole benefit of the trust's beneficiaries, *i.e.* themselves and their family members. EDWARD E. CHASE, JR., 11 LA. CIV. L. TREATISE, TRUSTS § 1:2 (2nd ed.). By donating their immovable property to their family trust, the Alonzos changed their ownership status in the property. Thus, when the bankruptcy trustee avoided the transfers through the consent judgment in the revocatory action, he acquired the property for the benefit of bankruptcy estate. Dengel, 1996 WL 5474374, at *2 (E.D. La. 9/25/1996) (citing In re Van De Kamp's Dutch Bakeries, 908 F.2d at 519; In re Joseph Delma Racca, 40 B.R. at 628). Further, Mitchell's recordation of the March 18, 2009, judgment, did not create a judicial mortgage[5] on the properties because the Alonzos no longer individually held the title to the immovable property.[6] Thus, the

---

[5] "A judicial mortgage secures a judgment for the payment of money." LA. CIV. CODE art. 3299. It is created by filing a judgment with the recorder of mortgages, and is established over property that the obligor owns when the mortgage is created, and over future property of the obligor when he acquires it. Id. at 3300, 3303.

[6] In addition to arguing that recording the March 18, 2009, judgment created a judicial mortgage over Charles Alonzo's property, Mitchell argues that a judicial mortgage was created over Charles Alonzo's property by recording the September 15, 2006, judgment that dissolved the mineral lease. However, recording that judgment did not create a judicial mortgage over Charles Alonzos' property because it was not a "money judgment" against him.

Mitchell also contends that it created a lien on the property by instituting garnishment proceedings through a writ of *fieri facias*. Writs of *fieri facias* are executory proceedings whereby a judgment creditor attempts to execute a money judgment by seizing the property of the debtor. See LA. CODE CIV. PRO. arts.

judicial mortgage never attached to the property which was subject to the revocatory action, and the decision of the bankruptcy court is AFFIRMED.

## 2. Relief from Automatic Stay

Mitchell also appeals the bankruptcy court's denial of its motion for relief from automatic stay in order to foreclose on Lot 91-A, Old Landing Subdivision, a property that the Alonzos donated to their family trust. Mitchell argued that it had a superior lien on the property by virtue of its recordation of the March 18, 2009, judgment, and that it should have been permitted to pursue foreclosure because the value of the property was less than its secured claim. After the bankruptcy court denied Mitchell's motion, Mitchell appealed that decision to this court in Civil Action No. 10-2824. This court affirmed the bankruptcy court's ruling and noted that Adversary Proceeding Nos. 10-1081 and 10-1083 needed to be resolved by the bankruptcy court before this court would have jurisdiction over the issues presented therein. Mitchell has re-asserted its arguments in the context of this appeal now that the bankruptcy court has ruled in Adversary Proceedings Nos. 10-1081 and 10-1083.

The bankruptcy court correctly denied Mitchell's motion for relief from automatic stay because it found that Mitchell did not have a secured claim on that property because the property was part of the corpus of the Alonzo family trust when the judgment was recorded. Because this court has affirmed the bankruptcy court's holding regarding the effect of Mitchell's recording the

---

2291, 2411; see also FRANK L. MARAIST, 1A LOUISIANA CIVIL LAW TREATISE, CIV. PRO. - SPECIAL PROCEED. § 4.9. At the time Mitchell instituted those proceedings, the Alonzos did not individually own the property, and it therefore could not be seized.

Further, the doctrine of after acquired title does not apply because title never reverted to the Alonzos individually, even after the revocatory action was resolved, avoiding the transfer.

15

March 18, 2009, judgment, the bankruptcy court's holding pertaining to Mitchell's motion for relief from automatic stay is also AFFIRMED.

## CONCLUSION

The bankruptcy court's August 12, 2011, opinion dismissing Mitchell's complaint seeking to have Charles Alonzo's debt to it excepted from discharge pursuant to 11 U.S.C. §§ 523(a)(2), (4), and/or (6) is **AFFIRMED.** The bankruptcy court's October 7, 2011, opinion finding that Mitchell does not have a valid secured claim, lien, right, interest, or privilege in the properties at issue and that the bankruptcy estate rightfully holds the title to the property pursuant to 11 U.S.C. § 551, and the consent judgment entered in Adversary Proceeding No. 10-1026 is **AFFIRMED**. The bankruptcy court's opinion denying Mitchell's motion for relief from automatic stay is **AFFIRMED**.

New Orleans, Louisiana, this __25th__ day of May, 2012.

_____
**MARY ANN VIAL LEMMON**
**UNITED STATES DISTRICT JUDGE**